UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Victoria Nelson, in her capacity as the Chapter 7 Trustee of Ameri-Dream Realty, LLC,

    Plaintiff

v.

XL America, Inc., et al.,

    Defendants

Case No.: 2:16-cv-00060-JAD-GWF

**Order Dismissing Coverage-Based Claims**

[ECF Nos. 37, 38, 41]

    Chapter 7 Bankruptcy Trustee, Victoria Nelson, as trustee for Ameri-Dream Realty, LLC's bankruptcy estate, sues several insurance companies for their refusal to indemnify Ameri-Dream for approximately $1.2 million that was embezzled by one of its managers, Elsie Peladas-Brown.[1] I dismissed with prejudice all coverage-based claims arising out of that embezzlement because of an express exclusion in the policy, and I granted Nelson leave to amend her remaining unlawful-practices claims only.[2] But Nelson exceeded the scope of leave and also included new coverage-based claims in her amended complaint, arguing that they arise not from Elsie's embezzlement, but from Elsie's breach of fiduciary duty by failing to safeguard the funds from herself.[3]

    Greenwich Insurance Company moves to dismiss the new coverage-based claims because, among other things, they still arise out of Elsie's embezzlement,[4] and the other defendants move to dismiss all claims against them because the complaint does not allege facts to show that they are parties to the insurance agreement.[5] Nelson countermoves for leave to

---

[1] ECF No. 36.

[2] ECF No. 33.

[3] ECF No. 36 at 14–17.

[4] ECF No. 37.

[5] ECF No. 38.

1

amend her amended complaint.[6] I deny Nelson's countermotion because amendment would be futile, grant Greenwich's dismissal motion, and grant in part the dismissal motion brought by the XL Defendants[7] and Pearl Insurance Group, LLC.

## Background

John M. Brown and his then-wife Elsie Peladas-Brown operated Ameri-Dream Realty, LLC, a property-management firm that managed residential rental property and held rental security deposits.[8] Elsie embezzled nearly $1.2 million from the security deposit account and wire transferred it to a bank in the Philippines.[9] Ameri-Dream filed for Chapter 7 bankruptcy protection,[10] its trustee filed an adversary action solely against Elsie,[11] and John and Ameri-Dream were absolved of any knowledge of or involvement in Elsie's scheme.[12]

An insurance claim was filed with Greenwich and XL America to indemnify Ameri-Dream for the embezzled $1.2 million under the Greenwich Insurance Policy.[13] Greenwich denied the claim, and Nelson brought this action. In the first round of dismissal motions, I found that the insurance policy "expressly excludes claims 'based on or arising out of[] the conversion, commingling, defalcation, misappropriation or improper use of funds or other property.'"[14] I also held that this exclusion (Exclusion D(1)) "has no exceptions" and "unqualifiedly exclude[s] from coverage" claims arising from Elsie's embezzlement.[15] I thus dismissed with prejudice all

---

[6] ECF No. 41.

[7] The XL Defendants are: XL America, Inc.; XL Insurance America, Inc.; XL Select Professional; and XL Select Professional Claims.

[8] ECF No. 11 at 3–4, ¶¶ 13–14.

[9] *Id.* at 4–5, ¶¶ 19–20.

[10] *Id.* at 7, ¶ 27.

[11] *Id.*

[12] ECF No. 16-3 at 10, ¶ 12; 13, ¶¶ 15–16.

[13] ECF No. 11 at 8, ¶ 32; 9, ¶¶ 36–37.

[14] ECF No. 33 at 4 (quoting the insurance policy, ECF No. 16 at 12–13).

[15] *Id.* at 5–7.

coverage-based claims.[16] I also dismissed Nelson's breach-of-fiduciary-duty claim with prejudice because Nevada does not recognize that cause of action in the insurer-insured context.[17]

I allowed Nelson to proceed on her sole remaining, state-law, unfair-practices claim against Greenwich because it failed to oppose that claim. But I foreclosed Nelson's ability to pursue an unlawful-claim-denial theory because of my finding that Greenwich had no obligation to indemnify under the policy.[18] And I dismissed all claims against the remaining defendants (the XL Defendants and Pearl Insurance Group, LLC) because Nelson failed to allege facts to show that they were in any way a party to the insurance agreement.[19] I then granted Nelson leave to amend only that claim if she could plead true facts to cure that deficiency.[20]

Nelson filed an amended complaint. In it, she realleged the state-law unlawful-practices claim and added two new claims titled "Breach of Fiduciary Duty to the Company" and "Breach of Fiduciary Duty to Tenants and Customers."[21] She represents in her motion for leave to amend that these two claims are better construed as claims for a declaratory judgment that Greenwich and the other defendants are obligated to indemnify Ameri-Dream for the $1.2 million.[22] Greenwich reurges all of the arguments that it raised in its first dismissal motion—many of which I did not address in my prior order because the policy-exclusion argument was dispositive—and the XL Defendants and Pearl reurge the arguments they raised in their earlier dismissal motion.[23]

---

[16] *Id.* at 14.

[17] *Id.* at 8.

[18] *Id.* at 9.

[19] *Id.* at 10–11.

[20] *Id.* at 11.

[21] ECF No. 36.

[22] ECF No. 41.

[23] ECF Nos. 37, 38.

**Discussion**

**A.    Motion-to-amend**

Rule 15(a)(2) of the Federal Rules of Civil Procedure directs that "[t]he court should freely give leave when justice so requires," but leave to amend may be denied if the proprosed amendment is futile.[24]  In determining whether to grant leave to amend, district courts consider five factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint.[25]  "Futility alone can justify the denial of a motion to amend."[26]

Nelson's first-amended complaint alleges claims for "Breach of Fiduciary Duty to the Company" and "Breach of Fiduciary Duty to Tenants and Customers."[27]  She argues that these claims "would be more accurately characterized as requests for Declaratory Relief not as Breaches of Fiduciary Duty," and she represents that "the substance of the two claims remains nearly identical" in the proposed second-amended complaint.[28]  Indeed, the only differences between the two amended complaints are a handful of additional background allegations in the proposed second-amended complaint.

As I discuss in Section C, *infra*, I foreclosed Nelson's ability to seek reimbursement under the insurance policy when I found that the policy excludes claims arising from embezzlement.  The labels on these claims are irrelevant because their substance and goal are the same: reimbursement of the embezzled $1.2 million.  But the insurance policy does not allow Nelson to get what she wants, so amendment would be futile.  I thus deny her motion for leave to amend her first-amended complaint, and I evaluate the defendants' dismissal motions in light of the first-amended complaint.

---

[24] *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

[25] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (internal citation omitted).

[26] *Id.* (internal citation omitted).

[27] ECF No. 36 at 14–15.

[28] ECF No. 41 at 2.

## B. Motion-to-dismiss standard

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[29] While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[30] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[31] In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[32]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. The court must first accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption of truth.[33] Mere recitals of a claim's elements, supported by only conclusory statements, are insufficient.[34] The court must then consider whether the well-pled factual allegations state a plausible claim for relief.[35] A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[36] A complaint that does not permit the court to infer more than the mere possibility

---

[29] FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[30] *Twombly*, 550 U.S. at 570.

[31] *Iqbal*, 556 U.S. at 678.

[32] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[33] *Iqbal*, 556 U.S. at 678–79.

[34] *Id.*

[35] *Id.* at 679.

[36] *Id.*

of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[37]

**C.     The insurance policy excludes coverage for any claim related to the stolen $1.2 million.**

This second round of dismissal motions is largely reminiscent of the first: Nelson seeks reimbursement for the $1.2 million that Elsie embezzled, Greenwich offers several exclusions from the policy to protect it from indemnifying the loss, and the XL Defendants and Pearl argue that factual allegations have not been sufficiently pled against them.  Although I previously held that Nelson cannot seek reimbursement from the defendants because Elsie's embezzlement is excluded from coverage, Nelson argues that her new claims are not foreclosed by my prior order.[38]  This time, she argues that Elsie breached her fiduciary duty to Ameri-Dream and its clients by failing to safeguard the security-deposit funds, and it is that breach of duty that animates her reimbursement claim—not the embezzlement.[39]

Nelson cites to Exclusion D(3) to support her claim, but a recitation of the whole Exclusion D is helpful:

> The **Company** will not defend or pay any claim based on or arising out of: (1) the conversion, commingling, defalcation, misappropriation or improper use of funds or other property; (2) the gaining of any personal profit or advantage to which the Insured is not legally entitled; or (3) the inability or failure to pay, collect or safeguard funds held for others, unless the Insured is acting in the capacity of a **short term escrow agent**.[40]

---

[37] *Twombly*, 550 U.S. at 570.

[38] ECF No. 39 at 2.  When I granted Nelson leave to amend her original complaint, I limited that authorization to her state-law, unlawful-practices claim.  Nelson exceeded her authorization by adding these two new claims without first seeking additional leave.  Nevertheless, I overlook that overstep so I can dispose of these claims now instead of delaying the inevitable.

[39] *Id.* at 3, ¶ 7.

[40] ECF No. 37-1 at 18–19 (insurance agreement) (emphasis in original).

6

Nelson argues that the exception embedded within Exclusion D(3) saves her claims because Elsie was "acting in the capacity of a short term escrow agent."[41] But even if I assume that Elsie was acting in that capacity, this argument asks me to ignore the fact that Elsie converted the security-deposit funds and transferred them to a private bank account in the Philippines.

If I ask: "How did Elsie fail to safeguard funds held for others?" The answer can only be: "By embezzling them herself." And if I ask: "How did Elsie breach her fiduciary duties to Ameri-Dream and its clients?" The answer, likewise, can only be: "By embezzling the security deposits." All roads lead to Elsie's embezzlement, which is a dead end. No matter how Nelson disguises her claims, the motivation is the same: Elsie embezzled $1.2 million, and Nelson wants the defendants to reimburse Ameri-Dream for that amount. It defies common sense to separate Elsie's duty breach from her embezzlement. The policy expressly and unqualifiedly excludes coverage for claims arising from embezzlement; that Elsie was acting as a short-term escrow agent cannot help Nelson clear this hurdle.[42]

Nelson attempts to analogize this case to *In re Golden Guernsey Dairy, LLC*.[43] But that case is inapplicable because it was not a suit between an insurer and its insured, and there was no insurance agreement, let alone an exclusion within one, to interpret.[44] So, it cannot—and does not—stand for the proposition that a breach-of-fiduciary claim masks and overrides an otherwise excluded coverage-based claim. I once again find that Elsie's embezzlement was excluded from coverage under Exclusion D(1), so I dismiss all of Nelson's coverage-based claims against all defendants. Because I base my decision on Exclusion D(1), I do not reach Greenwich's remaining arguments.

---

[41] ECF No. 39 at 9.

[42] The rules of grammar also belie Nelson's argument. This exclusion has three different categories of excluded conduct, separated by semi-colons. Elsie's embezzlement triggers each of them, however the "unless the Insured is acting in the capacity of a short term escrow agent" exception only applies to the third trigger. It thus does not save the other two from applying, and they clearly do.

[43] *In re Golden Guernsey Dairy, LLC*, 548 B.R. 410 (Bank. D. Del. 2015).

[44] *Id.*

7

**D.     The claims against the XL Defendants and Pearl may proceed.**

With all coverage-based claims dismissed again, the only remaining claims are the protocol-based, unfair-practices claims under NRS 686A.310.[45] Greenwich does not move to dismiss these claims,[46] but the XL Defendants and Pearl do.[47] NRS 686A.310 deems unfair several activities by an insurer.[48] And the Nevada Supreme Court has held that "there is no indication that the legislature intended NRS 686A.310 to apply to other entities beyond insurers."[49]

The XL Defendants and Pearl argue that "[t]here is absolutely no basis for" Nelson's assertion that they are insurers and therefore cannot be liable under the statute.[50] But at this dismissal-motion stage, I must take all of Nelson's well-pled factual allegations as true and draw all reasonable inferences in her favor. Nelson alleges that the XL Defendants and Pearl are parties to the insurance agreement, are in privity of contract with Ameri-Dream, and are therefore insurers under the statute.[51] She supports these broad allegations with specific factual allegations that show that representatives for the XL Defendants and Pearl were involved in processing her insurance claims and determined whether they were excluded from coverage.[52] The agreement itself also suggests, Nelson argues, that the XL Defendants and Pearl are

---

[45] *See, e.g.*, ECF No. 33 at 9 ("Nelson can only maintain claims that the defendants' protocol—their investigation and correspondence—leading up to the denial violated NRS 686A.310.").

[46] *See* ECF No. 37 at 18 ("Defendant Greenwich Insurance Company respectfully request [sic] that this Court dismiss the Second Claim for Relief and the Third Claim for Relief against Greenwich . . . .").

[47] ECF No. 38.

[48] NEV. REV. STAT. § 686A.310.

[49] *Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 959 (Nev. 1998).

[50] ECF No. 46 at 3–4.

[51] ECF No. 40 at 7–10.

[52] *Id.*

insurers.[53]  These allegations are sufficient to survive the motion to dismiss.  So, Nelson may proceed on her protocol-based, unlawful-practices claims against the XL Defendants and Pearl.

### Conclusion

Accordingly, IT IS HEREBY ORDERED that Greenwich's motion to dismiss Nelson's second and third claims for relief in her first-amended complaint **[ECF No. 37] is GRANTED;**

The XL Defendants' and Pearl's motion to dismiss Nelson's first-amended complaint **[ECF No. 38] is GRANTED in part and DENIED in part;** and

Nelson's motion for leave to file a second-amended complaint **[ECF No. 41] is DENIED because amendment would be futile.**

Nelson's coverage-based claims are **dismissed with prejudice** because they are expressly excluded under the insurance agreement.  Nelson **may not** seek reimbursement from the defendants for the $1.2 million that Elsie embezzled.  Nelson may, however, proceed on her protocol-based, unfair-practices claim against all defendants.

Dated: June 4, 2018

_____
U.S. District Judge Jennifer A. Dorsey

---

[53] *Id.* at 7–8.